Madden, Judge,
dissenting in part:
Plaintiff claims the right to an extension of the time of performance of the contract for the number of days that it *701 was delayed by high water which made work on the project impossible, even though such high water and the greater part of its duration was normal, seasonal, and anticipated. Plaintiff bases this argument upon the following portion of Article 9 of the contract':
Provided, That the right of the contractor to proceed shall not be terminated or the contractor charged with liquidated damages because of any delays in the completion of the work due to unforeseeable causes beyond the control and without the fault or negligence of the contractor, including, but not restricted to, acts of God, or of the public enemy, acts of the Government,, fires, floods, epidemics, quarantine restrictions, strikes,, freight embargoes, and unusually severe weather or delays of subcontractors due to such causes: * *
I think plaintiff’s interpretation of this provision is not tenable. The whole.purpose of the proviso is to prevent contractors from being penalized by forfeiture of their contracts or by the assessment of liquidated damages because they encounter unanticipated obstacles to prompt performance. The proviso is advantageous to the Government also because it enables bidders to submit bids based, so far as the perils of forfeiture and liquidated damages are concerned, on normal and foreseeable events, rather than upon events which might occur, although they probably will not. In accordance with this purpose, and with the normal meaning of the words in the sequence in which they are here found, the events listed under the “including”1 phrase must each be intended to be unforeseeable. Not every fire- or quarantine or strike" or freight embargo should be an excuse for delay under the' proviso. The contract might be one to excavate for a building in an area where a coal mine had been on fire for years, well known to everybody, including the contractor, and where a large element of the contract price was attributable to this known difficulty. A quarantine, or freight embargo, may have been in effect for many years as a permanent policy of the controlling government. A strike may be an old and chronic one whose settlement within an early period is not expected. In any of these situations there would be no possible reason why the contractor, who of course anticipated *702 these obstacles in his estimate of time and cost, should have his time extended because of them.
The same is true of high water or “floods.” The normally-expected high water in a stream over the course of a year, being foreseeable, is not an “unforeseeable”, cause of delay. Here plaintiff’s vice-president testified that in making its bid plaintiff took into consideration the fact that there would be high water and that when there was, work on the levee would stop. Without this testimony we would have known that plaintiff did so. Its time was extended, in the contract, for normal and foreseeable high water. There is no reason why we should grant a further extension of the same number of days for the same cause. Allowance should be made, as was done by the contracting • officer, only for the number of days of unforeseeable high water.-
I do not regard the provision for an agreed sum as liquidated damages for noncompletion of the work at the time set by the contract as penal in its nature, so as to justify.a forced interpretation of the language of the contract, .leaving the defendant, without remedy fox'- the breach of the contract, according to its normal meaning.
ON REMAND BY THE SUPREME COURT
[Decided March 1,1943]
Whitaker, Judge,
delivered the opinion of the court:
This case is before us on remand by the Supreme Coui't with instructions to determine whether respondent is con-eluded by the findings of the contracting officer on the question of delays due to high water, and, if not, for a finding whether the 188 days of high water or any part of that time were in fact foreseeable.
We did not make a finding on- the finality of the findings of the contracting officer, which the Supreme Court denominates a threshold determination, because in this court neither of the parties raised such an issue either at the threshold of the case or at any other time.- They did not raise such an issue because the contracting officer’s findings apparently were sent direct to the Comptroller General and were never *703 sent to the plaintiff. The plaintiff appears to have been first advised of them by the Comptroller General in making final settlement of the amount due under the contract.
The only evidence relative thereto is plaintiff’s exhibit No. 2, which is correspondence between the parties relative to plaintiff’s claim for remission of liquidated damages deducted. This shows that on J anuary 25, 1934, the plaintiff inquired of the office of the United States Engineer of the Second New Orleans District as to the status of its claim for remission of liquidated damages. On January 25,1934, that office acknowledged receipt of the claim and stated that it would be investigated “and the claim will be forwarded to the General Accounting Office for settlement.” Oh J anuary 27, 1934, the plaintiff asked the United States Engineer’s Office to advise it “as soon as your recommendations have been sent to Washington so that we may follow up this claim for payment.” In reply plaintiff was advised on February 17, 1934 that its claim “was forwarded on February 14 to the General Accounting Office with recommendations and is now on its way through proper channels to final settlement.” Nothing further appears until the “Notice of Settlement of Claim,” dated April 10, 1934, was forwarded to plaintiff by the Comptroller General. This sets out the findings of the contracting officer on this question as follows:
The contracting officer has found with respect to the delay in the completion of Section C of the Missouri Bend Levee that there was a delay of 112 calendar days on account of high water during the contract period, that the normal expected delay on account of high water during this period was 83 days, that the normal expected delay subsequent to the contract period was 42 days and that the delay due to high water during the contract period occurred on Section A, which delay postponed the commencement of work on Section C. The contracting officer then finds that the delay which occurred on Section A of the Missouri Bend Levee caused a delay of 29 days in the completion of Section C. It therefore appears that there was an unforeseeable delay of 29 days in the completion of this Section.
With respect to the delay in the completion of Section C of the St. Gabriel Levee the contracting officer has found that there was a delay of 166 calendar days on account of high water, of which 100 calendar days were *704 considered foreseeable, being the normal expected delay for the period. It therefore appears that there was an unforeseeable delay of 66 days in the completion of this Section due to high water.
With reference to the delay in the beginning of work on Section C of the St. Gabriel Levee on account of the failure of the Levee Board to furnish right of way, the contracting officer has found that the injunction enjoining the Levee Board from furnishing the necessary right of way was dissolved prior to the actual commencement of work on this Section, consequently the remission of liquidated damages alleged to have been deducted for this reason is not authorized.
It appearing that the contractor was delayed 29 calendar days in the completion of Section C of the Missouri Bend Levee and 66 calendar days in the completion of Section C of the St. Gabriel Levee, because of unforeseeable conditions over which it had no control, the remission of liquidated damages for 95 days at $20.00 per day or $1,900.00 is allowed.
The contracting officer having found that the cause of the other delays were not excusable under the terms of the contract, such finding is final and conclusive and it follows that no amount in excess of $1,900.00 may be allowed.
Since the defendant did not contend that the findings of fact of the contracting officer were conclusive, there was no positive evidence that this was the first time plaintiff was apprized of these findings, but it is to be inferred that it was.
This was long after the work had been concluded. The work on the Missouri Bend Levee was completed on March 22, 1933, and on the St. Gabriel Levee on August 25, 1933; the communication from the General Accounting Office was dated April 10,1934. These findings of fact not having been communicated to plaintiff prior to final settlement by the General Accounting Office, there was no opportunity to appeal to the head of the department as provided for in the contract, and the findings of fact of the contracting officer, therefore, are not conclusive on the parties in this case. Cf. Austin Engineering Company v. United States, No. 43364, decided October 5, 1942, 97 C. Cls. 68. After this final settlement had been made the department concerned no longer had jurisdiction of the matter. The settlement was *705 final and conclusive upon it. Act of July 31, 1894, c. 174, sec. 8, 28 Stat. 208, as amended by sec. 304 of the Act of June 10,1921, 42 Stat. 24. The time for appeal to the head of the department was before final settlement, not after. This right of appeal was denied plaintiff by the failure of the contracting officer to'apprize it of his findings.
Were the 183 days of high water foreseeable?
During the taking of testimony plaintiff’s counsel conceded that high water was to be expected every year. He stated, in fact, that he relied upon the contracting officer’s decision. That officer determined that 183 days of high water were foreseeable. This was based on a daily record of the stages of the river at the location of the levee over a ten-year period. For the period of time covered by the contract the average number of days of high water over this ten-year period was 183 days.
In accordance with the above the court made the following
SUPPLEMENTAL FINDINGS OF FACT
1. The findings of fact of the contracting officer on the number of days of delay due to high water, which were foreseeable and which were not foreseeable, were not communicated to the plaintiff. It was not advised thereof until April 10,1934, when it received the notice of final settlement from the Comptroller General. The Missouri Bend Levee had been completed on March 22, 1933, and the St. Gabriel Levee on August 25,1933.
No appeal was taken from the contracting officer’s findings to the head of the department.
2. Based upon the experience of the eight or ten years preceding the execution of the contract, the plaintiff reasonably should have expected that it would be delayed by floods during the performance of the contract a total of 183 days.
The conclusion of law heretofore rendered was vacated and there was substituted in lieu thereof the following
CONCLUSION OF LAW
Upon the special findings of fact, as above supplemented, which are made a part of the judgment herein, the court *706 concludes as a matter of law that plaintiff is not entitled to recover and its petition is dismissed.
Judgment is rendered against plaintiff for the cost of printing the. record herein, the amount thereof to be entered by the cleric and collected by him according to law.
The Supreme Court having held that the plaintiff was not entitled to remission of liquidated damages if high water was foreseeable for the period stated, plaintiff is not entitled to recover and its petition, therefore, is dismissed. It is so ordered.
Madden, Judge; Littleton, Judge; and Whalex, Chief Justice, concur.
Jones, Judge, took no part in the consideration of this case on remand.